[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Digiacinto v. Indus. Comm.*, Slip Opinion No. 2020-Ohio-707.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-707

THE STATE EX REL. DIGIACINTO, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT, ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Digiacinto v. Indus. Comm.*, Slip Opinion No. 2020-Ohio-707.]

*Workers' compensation—Permanent total disability—Industrial commission is required to consider all evidence properly before it but is not required to list in its order each piece of evidence considered—Order need list only the evidence relied on—Court of appeals' judgment granting limited writ of mandamus reversed.*

(No. 2018-0953—Submitted December 10, 2019—Decided March 3, 2020.)

APPEAL from the Court of Appeals for Franklin County, No. 16AP-248, 2018-Ohio-1999.

_____

**Per Curiam.**

{¶ 1} The Tenth District Court of Appeals granted a limited writ of mandamus ordering appellant, the Industrial Commission of Ohio, to (1) vacate its decision denying the request of appellee, Paul A. Digiacinto, for permanent-total-disability ("PTD") compensation and (2) hold a new hearing on Digiacinto's PTD application. The commission appealed. We reverse the Tenth District's judgment.

## I. FACTS AND PROCEDURAL HISTORY

### A. *Injury and Claim History*

{¶ 2} Digiacinto suffered a workplace injury in August 2001. His workers' compensation claim was approved for health issues relating to his back. He received temporary-total-disability ("TTD") compensation that ended in June 2003. In November 2003, a United States Social Security Administration administrative-law judge ("ALJ") granted Digiacinto's request for social-security disability benefits. The ALJ found that Digiacinto was severely impaired and disabled under the federal Social Security Act but that he retained the capacity to perform "the exertional demands of no more than sedentary work."

{¶ 3} In June 2006, Digiacinto applied for PTD compensation. In January 2007, a staff hearing officer ("SHO") denied his application. Based on a medical doctor's opinion that Digiacinto was capable of medium-level work, the SHO found that he could return to his former employment, which was in the medium-exertion category. Alternatively, the SHO found that based on his age, education, and work experience, Digiacinto could be retrained to perform entry-level unskilled and semi-skilled sedentary and light jobs. The SHO concluded that Digiacinto was capable of sustained gainful employment and therefore was not permanently and totally disabled.

{¶ 4} In August 2013, Digiacinto filed a second application for PTD compensation. In January 2014, after a hearing, an SHO denied that application as well. Based on a medical doctor's opinion that Digiacinto could perform sedentary

work and on his age, education, and work history, the SHO concluded that Digiacinto was not permanently and totally disabled. In 2014, psychological conditions were added to Digiacinto's approved claim. The commission granted Digiacinto TTD compensation from August 8, 2014 through November 24, 2015.

### B. Current PTD-Compensation Claim

{¶ 5} In July 2015, Digiacinto filed a third application for PTD compensation. He supported that application with the report of Dr. Marian Chatterjee, a psychologist, who opined that Digiacinto was unable to engage in sustained remunerative employment due to his allowed psychological conditions. In addition, Dr. Nicholas Varrati opined that Digiacinto was unable to engage in sustained remunerative employment due to his allowed physical conditions. The Bureau of Workers' Compensation argued that Digiacinto had voluntarily abandoned the workforce for reasons unrelated to his approved conditions, because he had last worked in December 2001 and had not sought work or participated in vocational rehabilitation since then. In response, Digiacinto presented a copy of the November 2003 decision by the federal ALJ.

{¶ 6} In its decision, the commission noted that in January 2007 it had found Digiacinto to be capable of medium-duty work, including his prior position, and in January 2014 it had found him to be capable of sedentary work. Despite these findings, the commission observed, Digiacinto had not sought work or pursued vocational rehabilitation at any time between June 2003, when his first period of TTD compensation was terminated, and February 2014, when his TTD compensation was reinstated. The commission concluded on this basis that Digiacinto had voluntarily abandoned the workforce, rendering him ineligible for compensation. It therefore denied Digiacinto's PTD application.

### C. Mandamus Action

{¶ 7} Digiacinto sought from the Tenth District a writ of mandamus ordering the commission to vacate its order denying his PTD application. He

argued that the commission abused its discretion by failing to find that the 2003 federal ALJ's decision excused him from searching for work, thereby preserving his eligibility for PTD compensation. 2018-Ohio-1999, ¶ 63.

{¶ 8} A magistrate recommended that the court reject Digiacinto's argument and deny the writ. *Id*. at ¶ 64. The magistrate first observed that the commission's order did not mention the ALJ's decision. *Id*. at ¶ 78. But the magistrate concluded that this was not an abuse of discretion, because under *State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250, 658 N.E.2d 284 (1996), the commission is required to cite only the evidence that it *relies on*, and the presumption of regularity that attaches to commission proceedings permits the assumption that the commission *considered* all of the evidence before it. 2018-Ohio-1999 at ¶ 79. The magistrate therefore concluded that the commission had considered the ALJ's decision but rejected it as unpersuasive. *Id*. at ¶ 80.

{¶ 9} The magistrate further concluded that the ALJ's decision could not have been used to advance or defeat Digiacinto's PTD-compensation claim because the medical impairments underlying that federal social-security decision included medical conditions that were not allowed conditions for purposes of Digiacinto's state workers' compensation claim. *Id.* at ¶ 82-84, citing *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 454, 619 N.E.2d 1018 (1993) (a PTD-compensation award cannot be based on a nonallowed condition).

{¶ 10} Digiacinto objected to the magistrate's conclusions that the commission actually considered the ALJ's decision and that the ALJ's decision cannot be used to support a showing that Digiacinto was incapable of returning to work and therefore did not abandon the workforce. *Id*. at ¶ 16.[1] The Tenth District sustained both of Digiacinto's objections.

---

1. Up to this point in the proceedings, the parties had argued and the magistrate had considered a second issue: whether the Bureau of Workers' Compensation had waived its voluntary-abandonment defense by not asserting it in the proceedings regarding Digiacinto's prior TTD and

**{¶ 11}** As to the first objection, it concluded that "the ALJ's decision would seem to carry considerable weight in the commission's determination of Digiacinto's capability to work and, consequently, whether he left the workforce of his own volition," and therefore, "the magistrate could not presume that the commission had considered 'all the evidence' before it, specifically the ALJ's decision." 2018-Ohio-1999 at ¶ 23. As to the second objection, the Tenth District concluded that Digiacinto had submitted the ALJ's decision to show that he did not abandon the workforce—not to establish his entitlement to PTD compensation— so the magistrate improperly focused on the fact that the ALJ's decision was based in part on nonallowed conditions. *Id*. at ¶ 26-29.

**{¶ 12}** The Tenth District held that the commission's failure to mention the ALJ's decision in its order was an abuse of discretion. *Id*. at ¶ 23. It therefore granted a limited writ ordering the commission to vacate its order and conduct a new hearing in accordance with the court's decision. *Id*. at ¶ 31.

## II. ANALYSIS

### A. *Mandamus Standard*

**{¶ 13}** The commission is the exclusive finder of fact in workers' compensation matters; a court's role in adjudicating a mandamus complaint is to determine whether the commission abused its discretion by entering an order that is not based on some evidence in the record. *See State ex rel. Manpower of Dayton, Inc. v. Indus. Comm.*, 147 Ohio St.3d 360, 2016-Ohio-7741, 65 N.E.3d 751, ¶ 11.

---

PTD claims. *See* 2018-Ohio-1999 at ¶ 12-15. However, Digiacinto did not object to the magistrate's conclusion that the bureau did not waive the defense, *id*. at ¶ 16, and he makes no argument regarding the waiver issue on appeal. That issue is therefore not before us, and Digiacinto has waived any error with respect to it, *see State ex rel. Armstrong Steel Erectors, Inc. v. Indus. Comm.*, 144 Ohio St.3d 243, 2015-Ohio-4525, 41 N.E.3d 1233, ¶ 18, citing Civ.R. 53(D)(3)(b)(iv).

### B. The Commission Was Not Required to Discuss the ALJ's Decision

{¶ 14} The commission argues that the Tenth District erred by holding that it was required to discuss the ALJ's decision in its order denying Digiacinto's PTD application on grounds of voluntary abandonment of the workforce. We agree.

{¶ 15} The commission is required to *consider* all of the evidence that is properly before it. *State ex rel. Buttolph v. Gen. Motors Corp., Terex Div.*, 79 Ohio St.3d 73, 77, 679 N.E.2d 702 (1997). But the commission is not required to list in its order each piece of evidence that it has considered. *Id.*; *see also State ex rel. Metz v. GTC, Inc.*, 142 Ohio St.3d 359, 2015-Ohio-1348, 30 N.E.3d 941, ¶ 14. Rather, the commission's order need list only the evidence that the commission *relied on* in reaching its conclusion. *Buttolph* at 77; *Metz* at ¶ 14.

{¶ 16} "[B]ecause the commission does not have to list the evidence considered, the presumption of regularity that attaches to commission proceedings * * * gives rise to a second presumption—that the commission indeed considered all the evidence before it." *Lovell*, 74 Ohio St.3d at 252, 658 N.E.2d 284, citing *State ex rel. Brady v. Indus. Comm.*, 28 Ohio St.3d 241, 503 N.E.2d 173 (1989). However, under our decision in *State ex rel. Fultz v. Indus. Comm.*, 69 Ohio St.3d 327, 329, 631 N.E.2d 1057 (1994), there is an exception to this rule: if the commission *does* list the evidence it considered but omits a particular piece of evidence from that list, this court will presume that the commission overlooked it. *See also State ex rel. Scouler v. Indus. Comm.*, 119 Ohio St.3d 276, 2008-Ohio-3915, 893 N.E.2d 496, ¶ 17.

{¶ 17} If that evidence "could influence the outcome of the matter in question," this court will return the matter to the commission for further consideration. *Id.*; *see also Fultz* at 329 ("Because these reports could be the key to the success or failure of claimant's application, the cause must be returned to the commission for further consideration"). But "[w]here the omitted evidence 'is incapable of supporting a result contrary to that already reached by the

commission,' failure to consider it is not fatal and the cause will not be returned." *State ex rel. Staton v. Indus. Comm.*, 91 Ohio St.3d 407, 410, 746 N.E.2d 1061 (2001), quoting *State ex rel. Shields v. Indus. Comm.*, 74 Ohio St.3d 264, 268, 658 N.E.2d 296 (1996).

{¶ 18} Digiacinto and the commission agree that the commission's decision did not mention the ALJ's decision. Digiacinto asserts that the *Fultz* exception applies here because (1) in its order, the commission listed not only the evidence it relied on but also the evidence it considered and (2) the ALJ's decision is key to the success or failure of his PTD application. Digiacinto is incorrect on both points.

**1. The Commission's Decision Does Not List the Evidence Considered**

{¶ 19} Digiacinto claims that the commission "effectively listed" the evidence that it considered. In support of this claim, he points to the commission's reference to Dr. Varrati's report and to the commission's orders determining his prior PTD and TTD claims as examples of evidence that the commission considered but did not rely on.[2] However, the commission *did* rely on its prior determinations to support its conclusion that Digiacinto voluntarily abandoned the workforce despite being able to work. And the commission invoked Dr. Varrati's report to distinguish it and to justify the commission's conclusion, noting that while Dr. Varrati opined that Digiacinto could no longer work, the voluntary abandonment *predated* Dr. Varrati's report. Therefore, it is not clear that the commission listed any evidence that it did not rely on.

{¶ 20} Moreover, in all but two cases in which we have ordered the commission to reconsider a determination under the *Fultz* exception, the commission had expressly listed the evidence that it "reviewed and evaluated" separately from the evidence it relied on. *E.g.*, *Fultz*, 69 Ohio St.3d at 328, 631 N.E.2d 1057; *State ex rel. Balvin v. Youghiogheny & Ohio Coal Co.*, 70 Ohio St.3d

---

2. Digiacinto also claims that the commission's order evinces that it considered Dr. Chatterjee's report, but the order does not refer to that report.

163, 164, 637 N.E.2d 907 (1994). In one of the cases in which we issued a writ in the absence of such a clear statement, we noted that the commission had stated that "all relevant evidence was reviewed and considered" and had discussed all of the evidence presented except for one physician's questionnaire, which could have changed the outcome of the case. *Scouler*, 119 Ohio St.3d 276, 2008-Ohio-3915, 893 N.E.2d 496, at ¶ 18. In the other case, the commission had made an ambiguous statement that a motion was "not supported" by any evidence, which could have indicated that the commission erroneously believed that the movant had failed to *submit* supporting evidence, when in fact the movant had, so we returned the matter to the commission to clarify its decision. *State ex rel. Abex Corp. v. Indus. Comm.*, 74 Ohio St.3d 125, 128, 656 N.E.2d 933 (1995).

{¶ 21} The commission's decision in this case contains no such statements supporting a conclusion that the commission overlooked the ALJ's decision. We therefore conclude that as "[n]o effort was made to list the evidence considered * * *, *Fultz* is inapplicable." *Buttolph*, 79 Ohio St.3d at 77, 679 N.E.2d 702. Thus, "the presumption of regularity controls," *Lovell*, 74 Ohio St.3d at 253, 658 N.E.2d 284, and the commission's consideration and rejection of the ALJ's decision must be presumed.

## 2. The ALJ's Decision Is Not Key to the Success or Failure of the PTD Application

{¶ 22} Even if the commission did fail to consider the ALJ's decision, however, the Tenth District should not have returned the matter to the commission for further proceedings because the ALJ's decision "is incapable of supporting a result contrary to that already reached by the commission," *Shields*, 74 Ohio St.3d at 268, 658 N.E.2d 296; s*ee also Staton*, 91 Ohio St.3d at 410, 746 N.E.2d 1061.

{¶ 23} The commission denied Digiacinto's request for PTD compensation because it found that he voluntarily abandoned the workforce sometime between 2003 and 2014 and was therefore ineligible for PTD compensation in 2015. *See*

*State ex rel. Baker Material Handling Corp. v. Indus. Comm.*, 69 Ohio St.3d 202, 631 N.E.2d 138 (1994), paragraph two of the syllabus. Digiacinto, who has not worked since 2001 and has not pursued vocational rehabilitation, does not dispute his *abandonment* of the workforce. He instead acknowledges that he submitted the ALJ's decision to show that his removal from the workforce was not *voluntary*, arguing that "he was told by the ALJ that he could not work."

{¶ 24} To be involuntary, a retirement must be causally related to the industrial injury. *Compare State ex rel. McAtee v. Indus. Comm.*, 76 Ohio St.3d 648, 650, 670 N.E.2d 234 (1996) ("a claimant who initiates his or her retirement for reasons unrelated to the industrial injury is considered to have voluntarily retired") *with State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44, 531 N.E.2d 678 (1988), syllabus ("When a claimant's retirement is causally related to an industrial injury, the retirement is not 'voluntary' * * * ").

{¶ 25} The ALJ's decision is incapable of supporting a conclusion that Digiacinto left the workforce because of his industrial injury because contrary to Digiacinto's assertion, the ALJ did *not* tell Digiacinto that he could not work due to his allowed conditions or any others. Rather, the ALJ's decision expressly stated that Digiacinto was capable of sedentary work. The ALJ's finding that Digiacinto could perform some work is consistent with the commission's findings in its 2007 and 2013 orders. And the commission relied on those findings to *support* its conclusion that Digiacinto had voluntarily abandoned the workforce. The ALJ's decision therefore could not have influenced the outcome of this matter. *See State ex rel. McKee v. Union Metal Corp.*, 150 Ohio St.3d 223, 2017-Ohio-5541, 80 N.E.3d 491, ¶ 12 (earlier administrative finding that claimant retained the capacity to perform sustained remunerative employment supported conclusion of voluntary abandonment of the workforce); *State ex rel. Roxbury v. Indus. Comm.*, 138 Ohio St.3d 91, 2014-Ohio-84, 3 N.E.3d 1190, ¶ 13 (earlier finding that claimant retained the capacity for sedentary work supported same conclusion).

{¶ 26} Accordingly, we conclude that the Tenth District erred in returning this matter to the commission for it to consider the ALJ's decision.

### III. CONCLUSION

{¶ 27} For these reasons, we reverse the judgment of the Tenth District Court of Appeals.

Judgment reversed

and writ denied.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

FRENCH, J., not participating.

_____

The Bainbridge Firm, L.L.C., Kara S. Dolan, and Casaundra L. Johnson, for appellee.

Dave Yost, Attorney General, and Eric J. Tarbox, Assistant Attorney General, for appellant.

_____